1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BETHANY OXLEY,                          No. 2:23-cv-02270-DJC-AC

12              Plaintiff,

13        v.                                 ORDER

14   KAISER PERMANENTE, *a California*
     *non-profit public benefit Corporation*,
15   et al.,

16              Defendants.

17

18        Before the Court are Plaintiff's Motion to Remand (ECF No. 12) and Defendants'

19   Motion to Dismiss (ECF No. 8).  Plaintiff originally filed this matter in the Superior

20   Court of California, County of Sacramento.  (Not. of Removal ("NOR") (ECF No. 1) at 2.)

21   Defendant Kaiser Foundation Hospitals removed the action to federal court on the

22   basis that section 301 of the Federal Labor Management Relations Act ("LMRA")

23   preempts Plaintiff's otherwise state law-based causes of actions, thereby creating

24   federal jurisdiction, because Plaintiff's employment was subject to a collective

25   bargaining agreement.  (*Id.* at 2 –3.)  Plaintiff brings the present Motion to Remand

26   arguing that this action should be remanded to the Superior Court because

27   Defendants' removal was untimely, and because the rights asserted do not arise under

28   or rely on interpretation of the collective bargaining agreement and are therefore not

                                            1

1   preempted by the LMRA.  (Mot. to Remand at 1–2.)  Alternatively, Plaintiff requests that

2   any preempted claims be dismissed, and the remaining claims be remanded.   (*Id.*)

3   Relatedly, Defendants bring the present Motion to Dismiss arguing that Plaintiff's

4   claims that are preempted under the LMRA must be dismissed because they are time-

5   barred.  (Mot. to Dismiss ("MTD") at 15.)  For the reasons below, the Court GRANTS IN

6   PART Defendants' Motion to Dismiss, and GRANTS Plaintiff's Motion to Remand.

### I.     Background

8       Plaintiff was employed by Kaiser Foundation Hospitals as a Home-Care Nurse

9   from at least 2014 until her termination on October 4, 2018.  (Second Am. Compl.

10   ("SAC") (ECF No. 1-3) ¶ 11.xxxiv.)  Plaintiff's employment was subject to a collective

11   bargaining agreement.  (*See id.* ¶ 19; Collective Bargaining Agreement ("CBA") (ECF

12   No. 1-6).)  Plaintiff alleges that beginning in 2014, her supervisor Defendant Vance

13   Purcell made sexual advances on Plaintiff both directly and through Defendant Erick

14   Washburn, which Plaintiff rejected.  (SAC ¶¶ 11.i –11.ii.)  Plaintiff alleges that

15   Defendant Purcell then retaliated against her by creating a hostile work environment

16   and by subjecting Plaintiff to disparate discipline.  (*Id.* ¶¶ 11.vi, 11.x, 11.xxvi, 11.l.)

17       In April 2018, Plaintiff began caring for a patient at his home whom she refers to

18   as "Mr. K." (*Id.* ¶ 11.xi.)  Two distinct incidents occurred related to Mr. K. which

19   precipitated an investigation and discipline against Plaintiff.  First, Plaintiff contracted

20   with Mr. K. to purchase three of his vehicles, and put Mr. K. in contact with a "Mr. V."

21   for the sale of additional vehicles.  (*Id.* ¶¶ 11.xii–11.xv.)  Second, Plaintiff dropped off a

22   sample of Mr. K.'s blood to the hospital clinic that was apparently not processed in

23   accordance with the hospital's procedures and was ultimately destroyed (*id.* ¶¶ 11.xx–

24   11.xxii).  On August 2, 2018, the day after the blood sample was dropped off, Plaintiff

25   was removed from Mr. K's care team and was placed on administrative leave while the

26   hospital conducted an investigation into her conduct following two complaints from a

27   person named "Sara" who complained about Plaintiff's care for Mr. K.  (*Id.* ¶¶ 11.xxiii–

28   11.xxviii.)  Following Plaintiff's placement on administrative leave, on August 14, 2018

Plaintiff was suspended and placed on a performance improvement plan during a meeting to discuss the outcome of the investigation. (*Id.* ¶ 11.xxix.) Following this meeting, Defendant Purcell allegedly verbally abused and threatened Plaintiff, and accused her of having a relationship with Mr. V. who bought the additional vehicles from Mr. K. (*Id.* ¶ 11.xxx.)

Five days later, on August 19, 2018, Plaintiff was again notified of an investigation into her conduct, this time for giving her nurse's bag to a patient's niece in June 2018. (*Id.* ¶¶ 11.xxxi–11.xxxii.) She was questioned about the incident on September 6, 2018 by Defendant Purcell, who also accused Plaintiff of committing a HIPPA violation and taking advantage of Mr. K. when he was her patient. (*Id.*) Following this meeting, Plaintiff was again placed on administrative leave. (*Id.*) Her employment was terminated on October 2, 2018. (*Id.* ¶ 11.xxxiii.) Directly before this meeting occurred, Plaintiff was informed that Defendant Purcell had allegedly spoken about Plaintiff's impending termination and the reasons for her termination to non-management employees including a "Nurse Erik." (*Id.*)

Plaintiff appealed the termination by engaging in the grievance process outlined in the collective bargaining agreement beginning March 6, 2019. (*Id.* ¶¶ 11.xxxv, 11.xxxix.) Plaintiff alleges that during the grievance process, Defendants "did all in their power to destroy Plaintiff, including falsifying documents to spreading false rumors and statements about her professional conduct." (*Id.* ¶¶ 11.xliv, 11.xlvii.) The arbitrator decided in Defendants' favor on January 17, 2020 and the union terminated its representation of Plaintiff. (*Id.* ¶¶ 11.xlviii–11.xlix.) Plaintiff believes that the reasons for her termination are pretextual, and that she was disciplined and terminated in retaliation for rejecting Defendant Purcell's sexual advances, and because Defendant Purcell discriminates against women. (*Id.* ¶ 11.l–11.lviii.)

Plaintiff further alleges that during 2019 and 2020, Defendants Washburn and Purcell, acting on behalf of all Defendants, hacked both Plaintiff's cell phone and computer, and altered her emails and other evidence for her grievance proceedings.

3

1    (*Id.* ¶¶ 11.lxi–11.lxii.)  She also alleges that Defendants Washburn and Purcell have

2    continued hacking Plaintiff's devices to spy on her and intimidate her.  (*Id.* ¶¶ 14–16.)

3          Plaintiff filed the present action alleging Twelve Causes of Action: 1) Breach of

4    Contract; 2) Breach of the Implied Covenant of Good Faith; 3) Wrongful Termination;

5    4) Harassment based on sex/gender under the California Fair Employment and

6    Housing Act ("FEHA"); 5) Quid Pro Quo Harassment under FEHA; 6) Discrimination

7    based on sex/gender under FEHA; 7) Retaliation under FEHA; 8) Defamation; 9)

8    Intentional Infliction of Emotional Distress ("IIED"); 10) Intentional Interference with

9    Contractual Relationship; 11) Trespass to Chattel; and 12) Violation of the California

10   Comprehensive Computer Data and Access Fraud Act.  (*See generally* SAC.)

11         Plaintiff filed her original complaint in the Superior Court of the State of

12   California, County of Sacramento, on March 29, 2021.  (Compl.  (ECF No. 1-2, Ex. A) at

13   1.)  She thereafter amended her complaint twice to add additional claims and

14   Defendants, (*see* First. Am. Compl. (ECF No. 1-2, Ex. G) at 1; SAC at 1) and added

15   Defendant Kaiser Foundations Hospitals in the operative SAC filed on August 29,

16   2023.  (SAC.)  Plaintiff served Kaiser Foundation Hospitals on September 6, 2023, and

17   Defendant Kaiser Foundation Hospitals removed this case on October 6, 2023.  (NOR

18   ¶ 27.)

19         Defendants filed a Motion to Dismiss on October 13, 2023 which Plaintiff has

20   opposed.  (MTD; Pl's Opp'n to MTD (ECF No. 10).)  In their Motion to Dismiss and

21   Opposition to Plaintiff's Motion to Remand, Defendants assert that Plaintiff's First,

22   Second, Eighth, Ninth, and Tenth Causes of Action are preempted.  (MTD at 1; Defs'

23   Opp'n to Mot. to Remand ("Defs' Opp'n.") (ECF No 15) at 10 –16.)[1]  They further assert

24   that these preempted claims must be dismissed as time barred.  Plaintiff filed a Motion

25   to Remand this case to California Superior Court on November 6, 2023, which

26   Defendants have opposed.  (Mot. to Remand; Defs' Opp'n.)  Because the two motions

27

---

28   [1] In their Notice of Removal, Defendant only asserted that Plaintiff's First, Second, and Tenth Causes of Action are preempted by the LMRA.  (NOR at 16.)

1   raise interrelated issues, the Court will decide the motions together.

2          The Court held oral argument on both motions on December 14, 2023 with

3   Richard A. Lewis appearing on behalf of Plaintiff, and Sean T. Strauss appearing on

4   behalf of Defendants Kaiser Foundation Hospitals, Purcell, and Washburn.

5   **II.     Legal Standards**

6          A defendant may remove a state court civil action to federal court so long as

7   that case could have originally been filed in federal court, based on either diversity

8   jurisdiction or federal question jurisdiction.  28 U.S.C. § 1441(a); *City of Chicago v. Int'l*

9   *Coll. of Surgeons*, 522 U.S. 156, 163 (1997).  Federal question jurisdiction is met

10  where the action "aris[es] under the Constitution, laws, or treaties of the United

11  States."  *See* 28 U.S.C. § 1331.  "[T]he presence or absence of federal-question

12  jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that

13  federal jurisdiction exists only when a federal question is presented on the face of the

14  plaintiff's properly pleaded complaint."  *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475

15  (1998).

16         Removal jurisdiction is to be rejected in favor of remand to the state court if

17  there are doubts as to the right of removal.  *Geographic Expeditions, Inc. v. Estate of*

18  *Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010).  The defendant seeking removal of an

19  action from state court bears the burden of establishing grounds for federal

20  jurisdiction by a preponderance of the evidence, *see id.* at 1106-07; *Hunter v. Philip*

21  *Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564,

22  566-67 (9th Cir. 1992), but the district court must remand the case "[i]f at any time

23  before final judgment it appears that the district court lacks subject matter

24  jurisdiction."  28 U.S.C. § 1447(c); *see also Smith v. Mylan, Inc.*, 761 F.3d 1042, 1044

25  (9th Cir. 2014); *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir.

26  1997) (holding that remand for lack of subject matter jurisdiction "is mandatory, not

27  discretionary").

28

Additionally, under Federal Rule of Civil Procedure 12(b)(6), a complaint or parts of a complaint may be dismissed for failure to state a claim upon which relief can be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory.  *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  When considering a motion to dismiss, the Court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party."  *Steinle v. City and Cnty. of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).

### III.    Discussion

#### A.  Timeliness of Removal

Under 28 U.S.C. § 1446(b)(1) a "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  A later-served defendant may remove the case with the consent of other defendant(s), despite those parties not having previously removed the action.  28 U.S.C. § 1446(b)(2)(c).  The 30-day time limit "is mandatory and a timely objection to a late petition will defeat removal . . . ."  *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).

Plaintiff asserts that removal was untimely because, although Plaintiff did not serve Defendant Kaiser Foundation Hospitals until September 6, 2023, Kaiser Foundation Hospitals was constructively on notice of the action, which referred to "Kaiser Permanente" numerous times, when Plaintiff served Defendants Purcell and Washburn, [2] or when Plaintiff attempted to serve the incorrect corporate entities.

---

[2] Plaintiff also argues that Defendant Kaiser Foundation Hospitals "admitted" that it had been served with Defendants Purcell and Washburn.  The Court does not read this as an admission because Defendants included Kaiser Permanente Hospitals in that sentence only to designate references to "Defendants."  (*See* NOR ¶ 18 ("On February 23, 2023, Plaintiff served individual defendants Vance

1    (Mot. to Remand at 8; NOR ¶ 16.)  However, Plaintiff does not cite any caselaw

2    supporting such a theory, and indeed the caselaw is in opposition to it.

3         Formal service is required to commence the removal period, "not [] mere

4    receipt of the complaint unattended by any formal notice."  *Murphy Bros. v. Michetti*

5    *Pipe Stringing, Inc.*, 526 U.S. 344, 348, 356 (1999).  A party "is not obliged to engage

6    in litigation unless notified of the action, and brought under a court's authority, by

7    formal process."  *Id.* at 348.  "Actual or constructive notice of the action is not sufficient

8    to start the running of § 1446(b)'s thirty-day period.  Therefore, the removal period

9    does not begin to run until the defendant is properly served or waives service."

10   *Hutton v. KDM Transp., Inc.*, No. CIV.A. 14-3264, 2014 WL 3353237, at *2 (E.D. Pa. July

11   9, 2014) (citing *Michetti*, at 355–56); *see also Murphy v. Allora*, 977 F. Supp. 748, 752

12   (E.D. Va. 1997) (rejecting the plaintiff's argument that the 30-day removal period

13   commenced when the defendant had notice of the proceedings).  In *Hutton v. KDM*

14   *Transport*, the Eastern District of Pennsylvania found that the clock for removal did not

15   commence where the plaintiff failed to properly serve the defendant under the state's

16   service requirements, despite the defendant having actually received a copy of the

17   complaint and summons.  *Id.* at *2–*3.

18        In California, service of process requires, at a minimum, that the correct

19   corporate entity must be named for service to be effective on that entity.  Cal. Code

20   Civ. Proc. § 412.30.  "[T]he fact that two related entities might share the same 'primary

21   contact' for the purpose of responding to litigation has no legal consequence."  *Cox v.*

22   *R.J. Reynolds Tobacco Co.*, No. CV-17-01229-SJO-JC, 2017 WL 1293007, at *3 (C.D.

23   Cal. Apr. 5, 2017).  Here, Plaintiff did not name Kaiser Foundation Hospitals as a

24   Defendant and effect service until September 6, 2023.  The fact that Plaintiff

25   incorrectly served the same contact when attempting service on the wrong legal entity

26

27   Purcell ('Purcell') and Erik Washburn ('Washburn,' collectively with Purcell, 'Individual Defendants,'
     collectively with KFH, 'Defendants') by hand with a copy of the Summons, Alternative Dispute
28   Resolution Information Package, Statement of Damages, and the FAC.").)

7

was not sufficient to effect service.  Similarly, though Kaiser Foundation Hospitals may have been aware of the suit once Defendants Purcell and Washburn were served, it was not yet a party to the lawsuit, and could not have removed the action, much less had an obligation to do so.  Therefore, the Court finds that the removal period did not commence for Kaiser Foundation Hospitals until it was served on September 6, 2023, making its October 6, 2023 Notice of Removal timely.

### B.  LMRA Preemption

Section 301 of the LMRA is a "mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts" requiring federal courts to exercise jurisdiction over federal labor law claims.  *Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985).  Where a collective bargaining agreement governs the claim against an employer, section 301 of the LMRA preempts the claim and converts it to a federal question over which the federal court has jurisdiction.  *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007).  In effect, section 301 "displace[s] entirely any state cause of action for violation of contracts between an employer and a labor organization," *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 23 (1983), such that "any claim purportedly based on [a] . . . state law is considered, from its inception, a federal claim, and therefore arises under federal law."  *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987).

Even where a plaintiff has not alleged a breach of the labor contract by an employer, a claim will be preempted where the right asserted "exists solely as a result of the [collective bargaining agreement]," or, if arising independently of the labor agreement, is "substantially dependent on analysis of a collective-bargaining agreement."[3]  *Burnside*, 491 F.3d at 1059.  However, "[section] 301 does not preempt 'every dispute concerning employment, or tangentially involving a provision of a

---

[3] In determining whether the claims are preempted, the Court may look beyond the pleadings, and in this instance, will refer to the documents included in the Defendant's notice of removal, including the relevant collective bargaining agreement.  *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003), as amended (Sept. 22, 2003).

[collective bargaining agreement].'" *Rodriguez v. USF Reddaway Inc.*, No. 2:22-CV-00210-TLN-DB, 2022 WL 18012518, at *2 (E.D. Cal. Dec. 30, 2022) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).

### i. Breach of Contract Claims (Counts One and Two)

Plaintiff's First and Second Causes of Action are for breach of employment contract and breach of the implied covenant of good faith and fair dealing, respectively.  In California, the covenant of good faith and fair dealing is implied in all contracts to effectuate the contract's purposes and promises, and to protect the parties' legitimate expectations by requiring that the contracting parties refrain from doing anything to injure the rights of the other to receive the benefits of the contract. *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683–84 (1988).  Plaintiff alleges that both of these causes of action are for breach of the "employment contract governed by a collective bargaining agreement."  (SAC ¶¶ 19, 29.)  Because these claims directly allege a violation of the collective bargaining agreement, they are preempted by the LMRA.  *See Franchise Tax Bd.*, 463 U.S. at 23 (any "claim for relief under the state law of contracts" which alleges a violation of the contract between an employer and a labor organization is preempted by the LMRA); *Scott v. Machinists Auto. Trades Dist. Lodge No. 190 of N. California*, 827 F.2d 589, 592 (9th Cir. 1987) (citing *Allis-Chalmers*, 471 U.S. at 217) (actions for breach of the covenant of good faith and fear dealing are necessarily contract claims preempted by the LMRA).

Accordingly, the Court finds that Counts One and Two are preempted by the LMRA.

### ii. Intentional Interference with Contractual Relationship (Count Ten)

The Tenth Cause of Action alleges that Defendants Purcell and Washburn intentionally interfered with Plaintiff's contractual relationship with her employer.  This claim differs from the above in that it does not allege a violation of the of the contract itself, and is not a claim against any contracting party, but rather alleges a violation of

California tort law by third-party individuals.  The elements of an intentional interference with contractual relationship claim are "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Defendant broadly asserts that Plaintiff's tenth cause of action seeks to vindicate a right or duty arising out of the bargaining agreement, and that "[c]ourts within the Ninth Circuit routinely conclude that state law claims for . . . intentional interference with contractual relationship are preempted by Section 301 under the first *Burnside* prong." (MTD at 11.)  However, the two cases cited by Defendant do not establish such a bright line rule.  First, in *Kobold v. Good Samaritan Regional Medical Center* the Ninth Circuit merely deferred to the arbitrator's previous ruling that the plaintiff's claims arose from the contract.  832 F.3d 1024, 1047 (9th Cir. 2016).  The Ninth Circuit determined that it did not have the power to disturb this ruling, stating  "[e]ven if we were convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." *Id.* (quoting *Sw. Reg'l Council of Carpenters v. Drywall Dynamics*, Inc., 823 F.3d 524, 530 (9th Cir. 2016)).  Before upholding this ruling, the Ninth Circuit indicated it would have ruled differently, noting that the "claim does not appear to fit comfortably into either prong of the *Burnside* test" and that the "right to be free from harmful interference by a third party in an employment relationship [is] 'conferred upon an employee by virtue of state law, not by a [collective bargaining agreement].'" *Id.*  In *Greenly v. Sara Lee Corp.*, also cited by Defendant, the court concluded without any analysis that the contractual interference claim was preempted because "the contractual rights at issue necessarily arise out of the [collective bargaining agreement]."  No. CV-061775-WBS-EFB, 2006 WL 3716769, at *4 (E.D. Cal. Dec. 15, 2006).  The *Greenly* court's failure to

1  explain how the right arose solely out of the agreement is unpersuasive.  *Compare*
2  *Ariola v. Raytheon CA Techs. Corp.*, No. 23-CV-4664-MWF-AGR, 2023 WL 5764296, at
3  *7 (C.D. Cal. Sept. 6, 2023) (finding that the right to timely wages arose solely out of
4  the bargaining agreement because the agreement provided for different pay
5  arrangements than the statute, and therefore displaced the statutory right).

6        Here, Defendant also does not explain how Plaintiff's asserted right "exists
7  solely as a result of the [collective bargaining agreement]" as required by the first
8  *Burnside* prong.  491 F.3d at 1059.  Like the Ninth Circuit in *Kobold*, this Court fails to
9  see how the right to be free from contractual interference by a third party arises out of
10  the collective bargaining agreement.  The bargaining agreement says nothing about
11  rights the Plaintiff has with respect to third-parties, and any rights Plaintiff does have
12  under the agreement are rights as to the contracting parties.  The right to be free from
13  contractual interference arises under California common law and "transcend[s]
14  [Plaintiff's] employment relationship" with Kaiser Foundation Hospital.  *See Young v.*
15  *Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1001 (9th Cir. 1987).

16        However, the Ninth Circuit has found some intentional interference with
17  contractual relations claims to be preempted under the second *Burnside* prong based
18  on the need to interpret the bargaining agreement.  In order to prove intentional
19  interference with a contract, a plaintiff must show that the contract was in fact
20  breached or disrupted, and this showing often necessitates that the court interpret the
21  contract, or collective bargaining agreement, at issue.  *Rachford v. Air Line Pilots*
22  *Ass'n, Int'l*, 284 F. App'x 473, 476 (9th Cir. 2008), *as amended on denial of reh'g and*
23  *reh'g en banc* (Aug. 11, 2008); *Milne Emps. Ass'n v. Sun Carriers*, 960 F.2d 1401, 1412
24  (9th Cir. 1991), *as amended on denial of reh'g* (May 4, 1992).  When a court must
25  interpret the bargaining agreement to rule on the claim, the claim is preempted under
26  the LMRA.  *Id.*

27        However, there is a difference between "looking to" the agreement and
28  "interpreting" the agreement.  "When the meaning of contract terms is not the subject

of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be [preempt]ed." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "[I]nterpretation implies discordance over the meaning of a term that requires authoritative explication." *Cuellar-Ramirez v. US Foods, Inc.*, No. 16-CV-00085-RS, 2016 WL 1238603, at *5 (N.D. Cal. Mar. 22, 2016). Moreover, the resolution of the claim must be "substantially dependent" on the interpretation of the bargaining agreement for the claim to be preempted. *Burnside*, 491 F.3d at 1059.

Defendant has failed to point to the portions of the bargaining agreement it believes require judicial interpretation for this claim, but by the same token Plaintiff has not alleged which rights or obligations with which Defendants Purcell and Washburn allegedly interfered.[4] Plaintiff generally claims that Purcell and Washburn "prevented Plaintiff's performance or made her performance more expensive or more difficult," without explaining in what aspects or in what manner Defendants interfered in her performance.[5] (SAC ¶ 132.) Ostensibly, Plaintiff is alleging that Purcell's sexual harassment and Washburn's assistance with that harassment interfered with Plaintiff's work performance, (*id.* ¶¶ 11.i–11.x), and that Purcell's interference with Plaintiff's discipline and grievance process, including allegedly falsifying documents, spreading rumors, and hacking her computer and altering evidence, interfered with Plaintiff's

---

[4] Arguably, this failure suggests that the Plaintiff has not met the minimal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Given that the Court is remanding this case to the Superior Court, however, the Court concludes it would be inappropriate to dismiss claims based on federal pleading requirements. Defendants argued that the Court may retain jurisdiction of the case and order the Plaintiff to file an amended complaint clarifying this and other causes of action because those causes of action *may* give rise to federal jurisdiction if properly pleaded. However, Plaintiff has represented that she does not intend to amend her pleadings in a such a way as to give to rise to federal jurisdiction, and would rather forego a cause of action than litigate in federal court. Accordingly, the Court has no reason to believe that amendment will give the Court federal jurisdiction. If Defendants believe that a future amended complaint filed in state court gives rise to federal jurisdiction, they would be within their rights to attempt to remove the case again.
[5] It is important to note that Plaintiff is not claiming that Purcell and Washburn interfered with *Kaiser Foundation Hospital's* performance of the contract. As such Kaiser Foundation Hospital's performance and the portions of the CBA potentially relevant to Kaiser Foundation Hospital's conduct are not at issue in this cause of action.

12

1   ability to continue performing under the contract (*id.* ¶¶ 11.xxvi–11.xxxiv, 11.xliv.).

2   While a court will certainly have to look to the collective bargaining agreement in

3   order to determine whether Plaintiff's performance was disrupted, without knowing

4   which portions of the bargaining agreement were allegedly interfered with, the Court

5   cannot determine that such substantial contractual interpretation is required that the

6   claim is preempted.  *See Rivet*, 522 U.S. at 475 (federal jurisdiction must be apparent

7   on the face of the complaint); *Humble v. Boeing Co.*, 305 F.3d 1004, 1010 (9th Cir.

8   2002) ("[T]he fact that a need to interpret the CBA is only hypothetical seriously

9   undercuts a defendant's argument that the state law claim 'substantially depends' on

10   the terms of the CBA.").   As the burden is on the Defendant to establish federal

11   jurisdiction, *see Hunter*, 582 F.3d at 1042, and jurisdiction is governed by the well-

12   pleaded complaint rule, *Rivet*, 522 U.S. at 475, the Court does not find that Count Ten

13   is preempted.

### iii.   Defamation Claim (Eight Cause of Action)

15        Plaintiff asserts that Defendants defamed her by making false statements

16   inferring that Plaintiff had "committed a crime, lacked integrity, was dishonest, was

17   incompetent at her job, or possessed reprehensible personal characteristics or

18   behavior." (SAC ¶ 108.)  Based on the allegations of the SAC, it appears that Plaintiff

19   alleges Purcell specifically made defamatory comments when he accused Plaintiff of

20   having a relationship with "Mr. V.," lying about her knowledge of Mr. V's neighbors,

21   using her position to "take advantage of the patient [Mr. K.]," and giving a kaiser

22   nurse's bag to a patient's niece, and also defamed her when he "expos[ed] her

23   termination and the reasons for her termination to Nurse Erik and others" including

24   non-management employees.  (SAC ¶¶ 11.xxx–xxxii.)  She also alleges that Purcell and

25   the other Defendants "attacked Plaintiffs professionalism by lying about her blood

26   drop" at a Kaiser clinic not being done according to procedure.  (*Id.* ¶ 11.xliv.)

27        Similar to the above intentional interference claim, Plaintiff's defamation claim

28   involves a right based in California tort law which is independent of the Plaintiff's

employment relationship and asserted against a third-party.  *See Tellez v. Pac. Gas & Elec. Co.*, 817 F.2d 536, 538 (9th Cir. 1987) ("California's defamation law establishes nonnegotiable rights and obligations independent of any labor contract.").  "[A] defamation [claim] will only be preempted in a narrow set of circumstances where the statement(s) giving rise to the defamation claim were made pursuant to a requirement of the disciplinary procedures in the CBA or were 'inextricably intertwined with the CBA's grievance machinery thereby requiring an interpretation of the agreement.'" *Howerton v. Earthgrains Baking Companies Inc.*, No. 1:13-CV-01397 AWI, 2015 WL 3657748, at *4 (E.D. Cal. June 11, 2015) (quoting *Tellez*, 817 F.2d at 538–39).  Thus, where a plaintiff's claim is based on a notice that was required under the bargaining agreement, such a notice stating the reasons for a plaintiff's discipline or termination, the claim will be preempted.  *See id.* at *5.  Similarly, statements made in the course of an employer's investigation and pre-arbitration meetings pursuant to a bargaining agreement's disciplinary and grievance procedure are "inextricably intertwined with the grievance machinery of the collective bargaining agreement" and also preempted.  *See Scott*, 827 F.2d at 594.  In contrast, a claim based on a defamatory statement made by an individual outside the context of those procedures, like an employee circulating a letter accusing the plaintiff of buying cocaine on the job, is not preempted.  *See Tellez*, 817 F.2d at 538.

Here, Plaintiff's allegations do not concern a written notice or other notice required under the bargaining agreement, but they do all concern statements made in the context of the investigations into Plaintiff's conduct and the disciplinary and grievance process, save for Defendant Purcell's alleged statements made to "Nurse Erik" and other non-management personnel.  The statements made in the context of the investigation and during the grievance process are "inextricably intertwined" with the procedures under the bargaining agreement such that they are preempted.  However, the alleged statements Purcell made to non-management personnel more closely resemble those statements in *Tellez* as they were not made for the purpose of

complying with or participating in the procedures under the bargaining agreement. Thus, the portion of Plaintiff's defamation claim against Purcell concerning those statements involves a right separate and apart from the bargaining agreement and is not preempted.

Accordingly, Count Eight is preempted in so far as it is based on statements related to the investigation and discipline of Plaintiff, or made during the grievance process.  However, in so far as Count Eight is based on Purcell's statements made outside of that context, it is not preempted.

### iv.   IIED Claim (Ninth Cause Action)

In *Humble v. Boeing Co.*, the Ninth Circuit summarized two key principles for determining whether an IIED claim is preempted by the LMRA.  305 F.3d 1004, 1012–13 (9th Cir. 2002).  "First, if the [collective bargaining agreement] *specifically* covers the conduct at issue, the claim will generally be preempted."  *Id.*  If the IIED claim "attempts to enforce rights or duties established by the [collective bargaining agreement]  while sidestepping the [collective bargaining agreement] 's dispute resolution processes, it is preempted."  *Id.*  However, under the second principle, even claims covered by the bargaining agreement will not be preempted if the IIED claim is "tacked on to the violation of a separate specific non-negotiable state statute, the violation of which always rises to the level of outrageousness."  *Id.* at 1013-14; *Newberry v. Pac. Racing Ass'n*, 854 F.2d 1142, 1148 (9th Cir. 1988) (noting that the court has construed the exception very narrowly).[6]  Barring this exception, when a claim is based on an "employee's discharge or conduct of employer in investigatory proceedings preceding discharge," and such proceedings are covered by the collective bargaining agreement, the emotional distress claim will be considered so

---

[6] For example, a claim for the failure to provide employment accommodations, if covered by the bargaining agreement, would be preempted; on the other hand, a claim based on the use of two-way mirrors in a restroom, though related to working conditions under a bargaining agreement, is based on a violation of a state statute and is inherently outrageous conduct, and would not be preempted. *Boeing*, 305 F.3d at 1013–14 (citing *Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 696 (9th Cir. 2001), *as amended* (Aug. 27, 2001)).

1    "inextricably intertwined with interpretation of [the collective bargaining agreement]"

2    that it is preempted.  *Newberry*, 854 F.2d at 1148–49 (quoting *Scott*, 827 F.2d, 594

3    and *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 1002 (9th Cir.1987))

4    (collecting cases).

5           The exact conduct underlying Plaintiff's IIED claim is unclear, but based on the

6    facts presented throughout the SAC, it appears that Plaintiff is alleging that Defendant

7    Purcell specifically caused Plaintiff severe emotional distress by sexually harassing her,

8    by verbally threatening and intimidating her, and by hacking her computer and phone

9    to alter evidence and harass her.  The collective bargaining agreement does not

10   address any rights related to sexual or verbal harassment in the workplace,[7] nor does

11   it address any rights related to computer or data privacy.  Thus, the claims against

12   Purcell in so far as they allege harassment or hacking are not covered by the

13   bargaining agreement and not preempted.  *See Tellez*, 817 F.2d at 539 (finding that

14   an IIED claim was not preempted where the bargaining agreement was "silent on

15   work conditions, and vague on disciplinary formalities.").

16          Otherwise, Plaintiff's IIED claim against all Defendants appears to be based on

17   Defendants' conduct during the disciplinary and grievance processes, including

18   Purcell's conduct during the processes, and Plaintiff's ultimate termination.  This

19   conduct is clearly governed by the termination and grievance provisions of the

20   bargaining agreement which provides that an employee with more than twelve

21   months of employment may only be discharged for "just cause" and outlines a

22   detailed grievance procedure.  (CBA at 120–25.)  This case is similar to *Cook v. Lindsay*

23   *Olive Growers*, wherein the Ninth Circuit found that an emotional distress claim based

24   on the employer's conduct surrounding the plaintiff's discharge was preempted.  911

25   F.2d 233, 239 (9th Cir. 1990).  Although the discharge section was not detailed, the

26   fact that the agreement allowed only discharge for "just cause" required a court to

27   _____

28   [7] The bargaining agreement does specifically address workplace discrimination based on sex, but this section does not appear to cover Plaintiff's sexual harassment claims.  (*See* CBA (ECF No. 1-6) at 5.)

1    interpret that term in the bargaining agreement.  *Id.*  Further, a court would have to

2    interpret the grievance procedure to determine whether the employer's conduct was

3    reasonable.  *Id.*  In the present case, the Court would need to interpret the bargaining

4    agreement to determine whether the Defendants' conduct comported with the

5    grievance procedures, and whether Plaintiff was terminated for "just cause" in order to

6    determine whether that conduct was extreme and outrageous.

7           Accordingly, to the extent Plaintiff's IIED claim is based on conduct related to

8    her discipline and termination, and/or the grievance procedure, it is preempted by

9    the LMRA.  To the extent the IIED claim is based on Purcell's alleged sexual or verbal

10   harassment and hacking of Plaintiff's devices, the claim is not preempted.

11          **C.  Statute of Limitations**

12          Claims which are preempted by the LMRA – and are therefore construed as

13   claims under the collective bargaining agreement – are subject to the federal six-

14   month statute of limitations.  *Cook*, 911 F.2d at 237 (citing *DelCostello v. International*

15   *Bhd. of Teamsters*, 462 U.S. 151, 155, 103 (1983)); *Whittier v. Kaiser Found. Hosps.*,

16   No. CV-S-06-2693-FCD-GGH, 2007 WL 776093, at *5 (E.D. Cal. Mar. 12, 2007).

17   However, claims are tolled while a plaintiff is pursuing grievance procedures.  *Galindo*

18   *v. Stoody Co.*, 793 F.2d 1502, 1509, 1510 (9th Cir. 1986) (claims were tolled until the

19   plaintiff learned of the arbitrator's decision).

20          In the Motion to Dismiss, Defendants argue that any claims which are

21   preempted by the LMRA must be dismissed as untimely because Plaintiff failed to file

22   suit within the limitation period, even accounting for any tolling.  Plaintiff was

23   terminated on October 4,  2018, and any claims based on this termination would have

24   begun to run on this day.  (SAC ¶ 11.xxxiv.)  Plaintiff then engaged in the grievance

25   process on March 6, 2019, approximately five months and two days later. (*Id.*

26   ¶ 11.xxxv.)  Her engagement in the grievance process tolled her claims which were

27   the subject of the grievance process until the arbitrator issued a decision on January

28   17, 2020. (*Id.* 11.xlviii.)  The remaining approximately one month (less two days) left

1   for Plaintiff to pursue her claim would have then expired on February 15, 2020.

2   Plaintiff's filing on March 29, 2021 far exceeds this date and is untimely.

3          Plaintiff confusingly alleges that the arbitration process did not end until

4   January 2021 despite having stated that a decision was issued in January 2020, and

5   providing no facts to explain how or why the arbitration process continued for an

6   additional year thereafter.  Although Plaintiff claims that the Court "must take the

7   complaint facts as they are pled," (Pl's Opp'n to MTD at 5), a Court is not required to

8   accept implausible factual allegations.  "[S]ufficient factual matter" must make the

9   claim at least plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, even if

10  the Court were to accept this as true and find that the statute of limitations was tolled

11  until January 31, 2021, the March 29, 2021 filing would still be untimely.

12         Plaintiff also claims that Defendants engaged in defamation from May 6, 2019

13  through January 15, 2020, and that she experienced continuing harassment,

14  discrimination, and retaliation culminating on April 24, 2020.  As the conduct

15  underlying these claims would have therefore taken place during the arbitration

16  process and were not the subject of the arbitration process, the claims would not have

17  been tolled.  Taking the latest date for the defamation claim, January 15, 2020, the

18  portion of the defamation claim which is preempted by the LMRA is also untimely

19  because the statute of limitations would have run on June 15, 2020.  Similarly, any of

20  Plaintiff's preempted claims based on the continuing harassment, discrimination, or

21  retaliation would have run well before the March 29, 2021 filing date.

22         Therefore, all of Plaintiff's claims which are preempted under the LMRA must be

23  dismissed as time-barred.  Accordingly, the Motion to Dismiss Counts One and Two is

24  GRANTED.  The Motion to Dismiss Count Eight is GRANTED IN PART except to the

25  extent it alleges that Defendant Purcell made defamatory statement to non-

26  management personnel outside of the disciplinary and grievance process.  The

27  Motion to Dismiss Count Nine is also GRANTED IN PART to the extent it is based on

28

18

1  conduct related to Plaintiff's discipline and termination, and to the grievance
2  procedure.

3      In addition, the California statute of limitations for IIED claims is two years.  To
4  the extent that Plaintiff's IIED claim is not preempted, the portion of the claim based
5  on conduct which occurred prior to March 29, 2019 is time-barred.  Cal. Civ. Code
6  § 335.1; *Gilliland v. Safeway Inc.*, No. 2:08-cv-01134-MCE-CMK, 2008 WL 11267817,
7  at *7 (E.D. Cal. Oct. 10, 2008).  The only actionable conduct is the alleged hacking by
8  Defendants Purcell and Washburn which occurred after March 29, 2019.  Accordingly,
9  the Motion to Dismiss Count Nine is GRANTED IN PART to the extent it alleges
10 harassment or hacking prior to March 29, 2019.

11          **D. Supplemental Jurisdiction**

12     Under 28 U.S.C. §1367, where a federal court has jurisdiction over any claim, it
13 may exercise supplemental jurisdiction over all other claims which are related to the
14 claims over which it has original jurisdiction.  28 U.S.C. § 1367(a); *United Mine*
15 *Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).  Because the only claims over
16 which the Court would have jurisdiction must be dismissed, the Court should not
17 retain jurisdiction over Plaintiff's remaining state claims.  *See Gibbs*, 383 U.S. at 726
18 ("[I]f the federal claims are dismissed before trial, . . . the state claims should be
19 dismissed as well."); see also 28 U.S.C. § 1367(c)(3).  The Court will therefore remand
20 the case back to state court.[8]  *See Corlew v. Superior Duct Fabrication, Inc.*, No. 2:22-
21 CV-04466-JLS-E, 2022 WL 17834201, at *11 (C.D. Cal. Dec. 21, 2022) (remanding the
22 case back to state court after dismissing the only claim preempted by section 301).

23 **IV.    Conclusion**

24     For the above reasons, IT IS HEREBY ORDERED that Defendants' Motion to
25 Dismiss, ECF No. 8 is GRANTED IN PART and DENIED IN PART as follows:

26     1.  Counts One and Two are dismissed;

27

28 [8] As noted in footnote 4, the Court declines to rule on the Defendant's Motion to Dismiss to the extent
the motion challenges the sufficiency of Plaintiff's state law claims under the federal pleading standard.

2. Count Eight is dismissed against all Defendants except Defendant Purcell, and Count Eight is Dismissed against Purcell in so far as it is based on statements made during the investigation, disciplinary, and grievance processes; and

3. Count Nine is dismissed against all Defendants in so far as it is based on conduct during the investigation, disciplinary, and grievance processes, and dismissed against Defendants Purcell and Washburn to the extent it alleges conduct that occurred before March 29, 2019.

Additionally, Plaintiff's Motion to Remand, ECF No. 12, is GRANTED as to the remaining claims.

The Clerk of Court is direct to close this case and remand the action back to the Superior Court of California, County of Sacramento.

IT IS SO ORDERED.

Dated: __**January 5, 2024**__

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC2 – Oxley23cv02270.mtremandandmtd

20